## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

MARICAL, INC., et al.,      )
                               )
     Plaintiffs,       )
                               )
          v.          )     1:14-cv-00366-JDL
                               )
COOKE AQUACULTURE, INC.,   )
et al.,                         )
                               )
     Defendants.     )

## ORDER

This case concerns the validity and alleged infringement of patents teaching methods for improving the transition of pre-adult, farm-raised salmon from freshwater to seawater. The issue before the Court arises from the Defendants Cooke Aquaculture Inc., Cooke Aquaculture USA Inc., True North Salmon Co. Ltd., True North Salmon US Inc., True North Sales US Inc., and Salmones Cupquelan S.A.'s ("Defendants" or "Cooke") Motion to Amend their Answer (ECF No. 214). In a Decision and Order issued July 31, 2017, Magistrate Judge John C. Nivison granted the Motion (ECF No. 282). Plaintiffs Marical Inc., Europharma AS, and Europharma Inc. Canada ("Plaintiffs" or "Marical") filed a Motion for Reconsideration and Request for Clarification on August 8, 2017 (ECF No. 285). In a Decision and Order issued November 15, 2017 (ECF No. 309), Magistrate Judge Nivison granted the Plaintiffs' Motion, in part, by clarifying the scope of the allowed amendment, but otherwise denied the Motion. The Defendants filed their Amended Answer on November 22, 2017 (ECF No. 314). On November 29, 2017, the Plaintiffs filed an Objection to both of the Magistrate Judge's Decisions and Orders granting Defendants' Motion to

Amend (ECF No. 315). For the reasons that follow, the Plaintiffs' Objection (ECF No. 315) is **OVERRULED** and the Magistrate Judge's Orders granting the Defendants' Motion to Amend (ECF Nos. 282 and 309) are **AFFIRMED**.

## I. BACKGROUND

On February 28, 2017, the last day of fact discovery, the Defendants deposed Dr. William Harris, the lead inventor of the patents-in-suit. According to the Defendants, Dr. Harris testified that he knew of material prior art that he did not disclose to the United States Patent and Trademark Office ("USPTO") during the patent prosecution process. ECF No. 214 at 1-2. Based on the testimony, the Defendants argued they could state an actionable claim of inequitable conduct and that the timing of the revelation justified an amendment to their answer even though the scheduling order deadline for amendment of the pleadings had expired. Through a claim of inequitable conduct, a patent infringement defendant asserts that the patentee obtained the patent-in-suit by making material misrepresentations to the USPTO or by taking measures to suppress evidence that, if disclosed, would have prevented issuance of a patent. *Id*. at 1285-87. "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).

The Magistrate Judge's Decisions and Orders concluded that a reference titled *Nutrient Requirements of Fish*, National Research Council (1993) ("NRC 1993"), which contained information concerning the tryptophan content of salmon feed in the same ranges taught by the patents, and which, the Defendants allege, Dr. Harris knew about but did not disclose, could support the plausible inference that the

aquaculture industry already had available a prior art fish feed within the scope of the specially made feed described in the patents. *See* ECF No. 282 at 15; *see also* ECF No. 309 at 6 n.5.

## II. STANDARD OF REVIEW

The district court reviews the decision of a magistrate judge on a non-dispositive matter to determine whether it is "clearly erroneous or contrary to law." 28 U.S.C.A § 636(b)(1)(A) (2018); Fed. R. Civ. P. 72(a) (2018). A motion to amend a complaint is a non-dispositive pretrial matter within the purview of Fed. R. Civ. P. 72(a). *See Hofland v. LaHaye*, No. cv-09-172-B-W, 2010 WL 231737, at *2 (D. Me. Jan. 14, 2010). Thus, my review applies the clearly erroneous or contrary to law standard. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1080 (1st Cir. 1995) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal alteration omitted). "A finding is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Stile v. Cumberland Cty. Sheriff*, No. 2:14-cv-00406-JAW, 2017 WL 878440, at *4 (D. Me. Mar. 6, 2017) (quoting *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

## III. DISCUSSION

Once a scheduling order is in place, the liberal default rule, under which leave to amend is "freely given," is replaced by the more demanding "good cause" standard. *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). "This standard focuses

on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* Yet, even where there is good cause, a court can exercise its discretion to deny a motion to amend if the amendment would be futile. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 622-23 (1st Cir. 1996). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

Thus, to avoid futility, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the strict pleading requirements of Fed. R. Civ. P. 9(b) apply to counterclaims of inequitable conduct, requiring detailed factual averments and not merely notice pleading with respect to such claims." *Therasense*, 649 F.3d at 1304-05 (Bryson, J., dissenting).

The Plaintiffs argue that the Magistrate Judge erred by concluding that the Defendants' proposed amendment was not futile because the Court incorrectly found Defendants pleaded sufficient facts from which a factfinder could find that (A) Dr. Harris intended to deceive the USPTO; and (B), the prior art allegedly withheld from the USPTO was material to patentability and non-cumulative of other cited references.

## A.    Intent to Deceive

The Plaintiffs argue that the amended pleading is futile because Dr. Harris testified at his deposition that he had never seen NRC 1993 prior to the deposition,

and thus he could not have had the requisite intent to deceive the USPTO. Accordingly, the Plaintiffs contend that the Defendants cannot meet the heightened standard of Rule 9(b) for pleading inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); *see also Therasense*, 649 F.3d at 1290 ("To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the [US]PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a should have known standard does not satisfy this intent requirement.") (internal citations omitted).

The Magistrate Judge disagreed with the Plaintiffs, concluding that the Defendants alleged sufficient facts from which to infer that Dr. Harris knew of NRC 1993 at the time of the patent application. At his deposition, Dr. Harris did not testify that he was unfamiliar with NRC 1993, or had not been aware of it at the time of the patent application, but instead testified that "[he had] never seen this document before." ECF No. 315 at 7. NRC 1993, however, is a nutritional feed guideline, and Dr. Harris testified that he was familiar with the nutritional guidelines—and discussed them with his lawyers—at the time he filed the patent applications. ECF No. 320-3 at 3 ("[The guidelines are] the kind of bible that the industry goes on.").

The Plaintiffs further argue that Dr. Harris' testimony that he does not recall whether he disclosed the nutritional guidelines is insufficient to support an intent to deceive. *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent."). "Intent, however, is

rarely proven by direct evidence, rather it is typically inferred from the facts and circumstances surrounding the conduct at issue." *Exergen Corp. v. Brooklands Inc.*, No. 12-12243-DPW, 2018 WL 988956, at *8 (D. Mass. Feb. 20, 2018) (internal quotation marks omitted). Given Dr. Harris' testimony that he was aware of the nutritional guidelines and discussed them with his lawyers, but that he did not disclose them to the USPTO, the Magistrate Judge's conclusion that the Defendants alleged sufficient facts to support the requisite intent for inequitable conduct is neither clearly erroneous nor contrary to law.

## B.    Materiality

For a non-disclosure to meet the materiality standard that applies to a claim of inequitable conduct, the non-disclosure must be the "but for" cause for the issuance of the patent. *Therasense*, 649 F.3d at 1291. A patentee withholding a reference does not constitute inequitable conduct if the patent examiner in fact considered the reference, *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991), *overruled on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009), or if the allegedly withheld reference would have been less relevant than other information already before the USPTO. *Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009). A reference also cannot be but-for material to patentability if it is cumulative of another reference cited to the USPTO. *See Dig. Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006). A reference is cumulative when it "teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the

[US]PTO." *See Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1575 (Fed. Cir. 1997).

The Plaintiffs argue that NRC 1993 cannot be material because it is cumulative of Walton et al., *"The effect of dietary tryptophan level on growth and metabolism of rainbow trout (Salmo gairneri),"* Brit. J. Nutrition 51, 279-287 (1984) ("Walton"), and both NRC 1993 and Walton disclose the same tryptophan level in feeds for juvenile salmon. The Magistrate Judge distinguished Walton because Walton's focus was the dietary needs of rainbow trout, not salmon, whereas NRC 1993 "would have provided the examiner with a prior art reference containing data for multiple fish, including salmon species." ECF No. 309 at 8.

Because the two references have different focuses and determining materiality is premature at this stage, the Magistrate Judge's ruling that a finder of fact could plausibly find NRC 1993 non-cumulative is neither clearly erroneous nor contrary to law. *See Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-cv-02013, 2014 U.S. Dist. LEXIS 31462, at *14 (N.D. Cal. Mar. 9, 2014) ("The question of whether prior art that was not disclosed is cumulative is a factual issue that should not be resolved at the pleading stage.").[1]

The Plaintiffs further argue that the amended pleadings do not specify how or why NRC 1993 is material to patentability. However, the record indicates that on March 24, 2002, a patent examiner rejected certain claims of one of the Plaintiffs' patents and that, in response, the Plaintiffs submitted a reply brief in support of their

---

[1] The Plaintiffs further argue that NRC 1993 cannot be material because it refers to bound tryptophan, and not free tryptophan, which the Plaintiffs allege is what is relevant to the patents. The Defendants dispute the Plaintiffs' theory that only free tryptophan is relevant to the patents. Given this factual dispute, which would be premature to resolve now, a finder of fact could plausibly find NRC 1993 non-cumulative.

application touting their "specially made feed." ECF No. 282 at 4-5. Prior art that undermined or refuted the basis for the feed's uniqueness could plausibly be found to be material and suggests both why and how the USPTO would have considered the information.

## IV.  CONCLUSION

Plaintiffs' Objection (ECF No. 315) is **OVERRULED** and the Magistrate Judge's Decisions and Orders granting Defendants' Motion to Amend (ECF Nos. 282 and 309) are **AFFIRMED**.

**SO ORDERED.**

**Dated this 17th day of April, 2018**

_____ **/s/ JON D. LEVY** _____
**U.S. DISTRICT JUDGE**